IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN H. SHREVE, SR.                                                        PLAINTIFF

    v.                              CIVIL NO. 08-6116

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                             DEFENDANT

## MEMORANDUM OPINION

Plaintiff, John H. Shreve, Sr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Title II and XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on January 11, 2006, alleging an inability to work since January 31, 2005, due to chronic lower back pain and arthritis, right shoulder pain and seizures.[1] (Tr. 62-64, 106, 276, 340). For DIB purposes, Plaintiff maintained insured status through March 31, 2008. (Tr. 14, 16). An administrative hearing was held on October 11, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 349-372).

By written decision dated April 25, 2008, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr.17).

---

[1] Plaintiff previously applied for disability on February 5, 1999, and August 28, 2002, (347, 68-70).

Specifically, the ALJ found Plaintiff had the following severe impairments: chronic low back pain and right shoulder problems. (Tr. 17). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the exception that Plaintiff could not work at unprotected heights or around hazardous conditions or machinery. (Tr. 18). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a motel/house cleaner. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council which denied that request on October 23, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. 1).

On April 1, 2009, Plaintiff filed a motion to remand his case so that the administration could consider new and material evidence. (Doc. 5). On April 10, 2009, Defendant filed a response objecting to the motion. (Doc. 8). By Order dated April 20, 2009, this court denied Plaintiff's motion. (Doc. 9).

This case is before the undersigned pursuant to the consent of the parties. (Doc. 2). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 7, 10).

**II.    Evidence Presented:**

At the administrative hearing held before the ALJ on October 11, 2007, Plaintiff testified he was forty-three years of age and obtained a general equivalency diploma and some small engine repair training. (Tr. 352). The record reflects Plaintiff has worked as a roofer, a national guardsman and a maintenance worker. Plaintiff testified he injured his back in a motor vehicle

accident in 1993 and that since this accident his pain has worsened. (Tr. 354-355). Plaintiff testified he took Oxycodone for his pain. (Tr. 356). Since 2005, Plaintiff testified he has worked "every now and then" for his landlord cleaning trailers when people move out. (Tr. 353). Plaintiff testified that he works three to four days a week, for four to five hours a day. (Tr. 362). Plaintiff explained his work consisted of wiping down and cleaning the refrigerators, counter tops, stoves and bathrooms and mowing the property with a push lawn mower. (Tr. 363-364). Plaintiff testified when he works he is able to work at his own pace.

The medical evidence dated prior to his alleged onset date of January 31, 2005, reveals Plaintiff has sought treatment for back pain, right leg pain, seizures, left ear pain and hearing loss, a left wrist strain, bronchitis, left forearm pain, right ankle pain, chest pain and gastritis. (Tr. 183-201, 209-215, 228-266).

The medical evidence during the relevant time period reflects the following. On April 11, 2005, Plaintiff entered the St. Joseph's Mercy Health Center (SJMHC) emergency room complaining of low back pain. (Tr. 226-227). Plaintiff reported he had experienced chronic back pain for eleven years and that it had flared up with some activity over the past week. Plaintiff reported he had been taking Ibuprofen. Plaintiff denied numbness/weakness/tingling or pain in his lower extremities. After examining Plaintiff, Dr. Timothy F. Bumpas diagnosed Plaintiff with back pain. Plaintiff was given a prescription for Norco and referred to the Christian Medical Clinic.

On June 7, 2005, Plaintiff entered the SJMHC emergency room complaining of finger pain. (Tr. 223-225). Plaintiff reported he had been working with some metal hardware with rebar and that a piece of the metal snapped off and smashed and punctured his right index finger.

Plaintiff reported he immediately cleaned the wound and put Neosporin on it. Dr. Martin Hannon noted Plaintiff's right index finger was slightly swollen. Dr. Hannon observed no fracture on a x-ray of Plaintiff's finger. Plaintiff was placed on Augmentin for seven days. Plaintiff was also instructed to return to the emergency room in twenty-four hours so that his finger could be examined again to make sure the metal did not get into the joint space.

On August 19, 2005, Plaintiff entered the SJMHC emergency room complaining of chest pain. (Tr. 217). Plaintiff reported he woke up with bilateral chest pain mainly to the left and across the left arm. Plaintiff reported similar pains intermittently over the past couple of years. Plaintiff denied shortness of breath, abdominal pain, nausea, vomiting or diarrhea. Dr. Sarah K. Minor noted Plaintiff took himself off of Depakote over a year and a half ago. Dr. Minor noted Plaintiff's chest wall was very tender to palpation centered over the sternum and into the left. Dr. Minor noted Toradol and Aspirin helped reduce Plaintiff's pain. Plaintiff was placed in Chest Pain Observation where his pain was relieved and he was able to eat and had no further problems. Plaintiff was diagnosed with chest pain, suspect musculoskeletal etiology. Plaintiff was instructed to follow-up with Cardiology.

On January 24, 2006, Plaintiff was seen at the Veteran's Administration (V.A.) Medical Clinic with complaints of back pain. (Tr. 267A). Plaintiff reported since his involvement in a motor vehicle accident in 1993 he had experienced increasing difficulty with back pain and discomfort. Plaintiff reported he recently had lumbar spine films made by a private practitioner and had been told he had a significant amount of arthritis in the lumbar spine area. Plaintiff reported he lived in a trailer park and did maintenance for his landlord. He reported he can set his own pace and that he does not do hard jobs including plumbing, carpentry, roughing or

cleaning out. Plaintiff reported he tried to avoid heavy lifting or any job that requires a lot of bending. Upon examination, Dr. Dale Morris noted Plaintiff's gait appeared "somewhat halting" but "even and steady." Dr. Morris diagnosed Plaintiff with an old injury to the lumbar spine with an MRI dated in 1993, which demonstrated mild disc bulges at L4-L5 and L5-S1. Dr. Morris also opined Plaintiff had radiculopathy of the lower extremity due to disc disease in the lumbar area.

On July 25, 2006, Plaintiff was seen at the V.A. Medical Clinic in Hot Springs to establish himself as a patient. (Tr. 268A, 327). Plaintiff reported he fell on a roof the previous day and hit his left shoulder. Plaintiff reported he used to have seizures as a child and that the seizures had returned. Plaintiff reported he was put on Depakote last year but he could not remember when he had his last seizure. Plaintiff reported he quit taking the Depakote because he did not like the way it made him feel. Plaintiff was not taking any medications. X-rays of Plaintiff's left shoulder were normal. Plaintiff was diagnosed with low back and left shoulder pain. Plaintiff was to use a sling for his shoulder and to return in two weeks if there was no improvement. (Tr. 269A).

On August 10, 2006, Plaintiff presented for a follow-up appointment at the V.A. Medical Clinic. (Tr. 325). Plaintiff reported he was still having back pain daily and that his left shoulder was much improved. Plaintiff was not taking any medications. Ms. Molly O. Hollingsworth, RNP, noted Plaintiff did not have tenderness on examination of his left shoulder. Plaintiff was diagnosed with low back pain and left shoulder pain and was prescribed Tramadol for his low back pain. (Tr. 326).

On September 19, 2006, Plaintiff underwent a MRI of the lumbar spine which revealed:

-5-

mild developmental narrowing of the lumbar canal due to short pedicles, no significant degenerative disc disease identified except for mild diffuse bulge of the L3/4 disc. Moderate multilevel lower lumbar facet arthropathy.

(Tr. 298-299, 334-335).

On January 5, 2007, Plaintiff complained of having pain and grinding in his right shoulder for the past two weeks. (Tr. 321). Plaintiff explained he was a roofer and that he carried shingles but he carried them on his left shoulder. (Tr. 322). Plaintiff's medications consisted of Tramadol every four to six hours as needed. The examiner noted Plaintiff had limited range of motion in his right shoulder due to pain. A musculoskeletal examination revealed no gross deformities or crepitus. Plaintiff was diagnosed with right shoulder pain and low back pain. Plaintiff was to continue to take his medication and to return for a follow-up in six months.

Due to his continued right shoulder pain, Plaintiff underwent a MRI of his right shoulder on February 13, 2007, that revealed:

> minimal fraying and partial thickness articular surface tear involving the conjoined region of the supraspinatus and infraspinatus tendons at its insertion site. No other significant abnormalities present.

(Tr. 332-333).

On March 14, 2007, Plaintiff reported he continued to have low back pain off and on, and he still experienced right shoulder pain and grinding. (Tr. 319). Plaintiff reported his pain medications were not working. Nurse Hollingsworth noted Plaintiff had limited range of motion of his right shoulder due to pain. Some crepitus was also noted with range of motion. Plaintiff was diagnosed with low back pain and right shoulder pain and his pain medication was increased. Plaintiff was also to undergo an orthopedic consult.

AO72A
(Rev. 8/82)

On April 9, 2007, Plaintiff underwent an orthopedic evaluation performed by Dr. Ashley S. Ross. (Tr. 318). Dr. Ross noted Plaintiff's right shoulder pain started approximately one month before the exam. Plaintiff reported he was unable to use his shoulder because it hurt to move it. Plaintiff reported he had to be careful when he was on a ladder. Upon examination, Dr. Ross noted Plaintiff had abduction to about thirty degrees, flexion to forty-five degrees and severe limitation of internal and external rotation. Dr. Ross reviewed both x-rays and a MRI of Plaintiff's right shoulder. Plaintiff was diagnosed with tendinitis of the rotator cuff with a partial tear, but not full-thickness. Dr. Ross injected Plaintiff's subacromial space with Depo-Medrol, Lidocain and Marcaine which provided fair pain relief. Plaintiff was also taught isometric exercises and was referred to physical therapy. Dr. Ross did not give Plaintiff a return appointment but told him if he continued to experience problems after one month he should return to his primary care physician. (Tr. 319).

On April 19, 2007, Plaintiff called and cancelled his occupational physical therapy consultative evaluation. (Tr. 317-318).

On May 7, 2007, Plaintiff presented to the V.A. Medical Clinic stating that he was itching all over. (Tr. 314-315). Plaintiff reported his itching worsened when he took Hydrocodone. Plaintiff was told the active ingredient in Hydrocodone was Acetaminophen which Plaintiff reported he was allergic too. Julia S. Wilder, LPN, told Plaintiff she would contact Nurse Hollingsworth. Ms. Wilder talked to Nurse Hollingsworth who told Ms. Wilder to start Plaintiff on Oxycodone IR.

On May 15, 2007, Plaintiff cancelled his second rescheduled occupational therapy appointment and stated he did not wish to reschedule. (Tr. 314).

AO72A
(Rev. 8/82)

A notation dated July 13, 2007, reports Plaintiff had a Pain Agreement for his prescription of Oxycodone on file with Dr. Troy Moore. (Tr. 314).

On September 18, 2007, Plaintiff returned to the V.A. Medical Clinic for a follow-up appointment regarding his low back pain. (Tr. 310). Plaintiff reported he tried Vicodin but reported the medication made him itch. Dr. Moore noted Plaintiff was taking the maximum dose of Tramadol and that Plaintiff requested a different pain medication. Dr. Moore started Plaintiff on Oxycodone. (Tr. 306, 311).

### III.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

AO72A
(Rev. 8/82)

year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

## IV. Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled through the date of the ALJ's decision.

AO72A
(Rev. 8/82)

### A. Subjective Complaints and Credibility Analysis:

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff's contends that his back and shoulder pain, seizures and inability to concentrate are disabling, the evidence of record does not support this conclusion.

The medical evidence reveals that during the relevant time period Plaintiff did seek treatment for chronic back pain which stemmed from his involvement in a motor vehicle accident in 1993. In April of 2005, Plaintiff reported a flare-up of back pain with some activity for the past week, but denied numbness/weakness/tingling or pain in his lower extremities. Plaintiff was given a prescription for Norco and referred to the Christian Medical Clinic (CMC). There is no evidence on the record indicating Plaintiff went to CMC and Plaintiff did not seek

-10-

AO72A
(Rev. 8/82)

treatment for his back pain again until January 24, 2006, nine months after his April 2005 emergency room visit. Plaintiff sought treatment for back pain again on July 25, 2006, and August 10, 2006, and then underwent a MRI of his lumbar spine on September 19, 2006, that revealed mild developmental narrowing of the lumbar canal due to short pedicles, no significant degenerative disc disease identified except for mild diffuse bulge of the L3/4 disc, and moderate multilevel lower lumbar facet arthropathy. On March 14, 2007, Plaintiff reported he experienced low back pain off and on. (Tr. 319). While Plaintiff's physicians have changed Plaintiff's medication to help treat his pain more effectively, no more invasive treatment was been recommended. Thus, while Plaintiff may indeed have an injury in his lower back and experience some degree of pain, the medical evidence indicates that his condition is not of a disabling nature. *See* Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to Plaintiff's right shoulder pain, the medical evidence reveals Plaintiff first sought treatment for grinding and pain in his right shoulder in January of 2007. At that time, Plaintiff reported he was working as a roofer and that he had experienced the onset of pain two weeks prior to his visit. Plaintiff was noted to have a limited range of motion in his right shoulder. Plaintiff underwent a MRI of his right shoulder in February of 2007 that revealed "minimal fraying and partial thickness articular surface tear." After noting crepitus and pain with range of motion of Plaintiff's right shoulder on March 14, 2007, Nurse Hollingsworth set Plaintiff up to undergo an orthopedic evaluation performed by Dr. Ross on April 9, 2007. Dr. Ross noted Plaintiff's report that he was not able to use his right shoulder due to pain and after

AO72A
(Rev. 8/82)

examining Plaintiff diagnosed him with tendinitis of the rotator cuff with a partial tear but not full-thickness. Dr. Ross prescribed physical therapy and instructed Plaintiff to return to his primary care physician if he did not experience improvement in one month. The record reflects, Plaintiff cancelled his first physical therapy appointment scheduled for April 19, 2007, and then cancelled his second physical therapy appointment on May 15, 2007, and asked that his appointment not be rescheduled. The record shows Plaintiff may indeed experience some right shoulder pain; however, if his pain was as extreme as alleged, the court finds it hard to believe he would have disregarded Dr. Ross's treatment plan by canceling his physical therapy appointments. Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."), 20 C.F.R. § 416.930(b).

With regard to Plaintiff's alleged seizures, the ALJ noted while Plaintiff testified he experienced a seizure the week before the administrative hearing, there was no evidence to suggest that Plaintiff continued to suffer from seizures. In July of 2006, Plaintiff reported he fell while working on a roof. At that time, Plaintiff reported he had seizures as a child and felt that his seizures had started again. Plaintiff reported he quit taking Depakote to treat his seizures about a year before due to medication side effects. Plaintiff was not diagnosed with a seizure disorder during that visit nor did he report experiencing seizures to a medical professional again during the relevant time period. Accordingly, we find substantial evidence to support the ALJ"s determination that Plaintiff does not have a disabling seizure disorder.

With regard to mental impairments, Plaintiff alleges due to his pain he has difficulty concentrating and that he is depressed. With regard to his concentration, the ALJ noted during

the day, when he was not working, Plaintiff was able to play video games and to watch television. These activities clearly do not support Plaintiff's allegations that he is unable to concentrate. As for his depression, Plaintiff did not allege depression when he applied for benefits and there is no evidence of record to show Plaintiff sought treatment for depression during the relevant time period. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed); See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability). It is also noteworthy that Plaintiff denied experiencing depression, anxiety or nervousness to his treating physicians. (Tr. 269, 310). Based on the evidence of record as a whole we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

With regard to plaintiff's testimony that his medications cause him to be drowsy, we point out that the medical evidence does not indicate Plaintiff discussed these side effects with his treating physicians. Richmond v. Shalala, 23 F.3d 1441, 1443-1444 (8th Cir. 1994).

The complete evidence of record concerning his daily activities is also inconsistent with his claim of disability. At the administrative hearing in October of 2007, Plaintiff testified that since 2005, he worked for his landlord doing maintenance work three to four days a week for four to five hours a day. (Tr. 362). Plaintiff described this work as wiping and cleaning out trailers after people moved out and mowing the lawn with a push lawn mower. There is also evidence to suggest that Plaintiff continued to work as a roofer up until at least January of 2007. (Tr. 322). Plaintiff reported he was able to do some household chores, including washing dishes

and dusting, at his home. Furthermore, Plaintiff reported in a Function Report dated January 12, 2006, that he would get up in the morning, drink his coffee, and then "go out looking for a job." (Tr. 89). See Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994) (claimant's statements that he was seeking work inconsistent with disability). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See *Hutton v. Apfel,* 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a

-14-

"claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with some limitations. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's treating and examining physicians placed no restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

**C.     Hypothetical Proposed to Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude him from performing other work as a motel/house cleaner. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### D. Veteran's Administration Disability Rating:

Finally, in making the disability determination, the ALJ acknowledged Plaintiff had been rated a twenty percent disability of his back for degenerative disc disease of the lumbar spine and a ten percent disability rating of his left lower extremity for mildly decreased sensation. (Tr. 18). The ALJ should consider the V.A.'s finding of disability, Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir.1998), but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504; Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir.1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards."). Based on the above, we find the ALJ properly addressed the V.A.'s disability rating.

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 11th day of January 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)